THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PHILIP LA COMBE, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Ninth District, February 10, 1939.

*William F. X. Geoghan, District Attorney [Edward H. Levine, Assistant District Attorney, of counsel], for the plaintiff.*

*Martin P. Krimko, for the defendant.*

*Louis E. Drago, amicus curiæ.*

*Ambrose J. Haddock and Louis Sisapel, for the legal bureau of the police department, amicus curiæ.*

SOLOMON, C. M. The defendant is charged with violating the provisions of section 986 of the Penal Law dealing with bookmaking. Incidental to the arrest, his person and premises, a candy store, were searched and from both sources certain slips with notations thereon were seized. The defendant contends the search and seizure occurred in violation of his rights under section 12 of article 1 of the new State Constitution in that they were made without a

search warrant and in the absence of circumstances justifying search and seizure without a search warrant. He, therefore, seeks to have the aforesaid slips excluded from evidence. Let us assume that the constitutional rights of the defendant were violated. Is the fruit of the unlawful search and seizure thereby rendered inadmissible?

The new State Constitution, which went into effect January first of this year and which contains in its Bill of Rights section 12 of article 1 prohibiting unreasonable searches and seizures, and providing for the issuance of search warrants, does not change the search and seizure rule in relation to evidence theretofore existing in this State. This rule is that even though evidence in a criminal case is obtained in violation of law, it is not thereby rendered inadmissible. The New York rule still is — and the same rule prevails in many other jurisdictions — that the criminal shall not escape because the constable has blundered, and that the remedy of the aggrieved is against the perpetrator of the trespass and not against the People of the State of New York in whose behalf the evidence is offered. The evidence is not anathematized because of the condemned manner of its obtainment.

Until comparatively recently this was the rule in the Federal courts. True it is that a contrary rule now prevails in these courts under the Federal Constitution, but the courts of this State do not and are not required to follow the Federal rule.

The presence in the new State Constitution of section 12 of article 1, which is the same as the equivalent provision in the Federal Constitution, does not alter the situation in this State. Section 12 of article 1 of the new State Constitution is the same as the old section 8 of the Civil Rights Law of this State. The mere incorporation of the language of the aforesaid section 8 in the Constitution of this State does not effect a change in construction.

The New York rule against exclusion of illegally obtained evidence which is otherwise admissible is laid down and elaborated in the leading case of *People* v. *Defore* (242 N. Y. 13), in an opinion written for the unanimous court by the late Judge CARDOZO in 1926. This decision was handed down when section 8 of the Civil Rights Law was on our statute books prohibiting unreasonable searches and seizures and providing for the issuance of search warrants. As was pointed out by Judge CARDOZO in the *Defore* case (at p. 23): " In this State the immunity is the creature, not of constitution, but of statute (Civil Rights Law, § 8). The Legislature, which created it, has acquiesced in the ruling of this court that the prohibition of the search did not anathematize the evidence yielded through the search. If we had misread the statute or misconceived

the public policy, a few words of amendment would have quickly set us right. The process of amendment is prompt and simple. It is without the delays or obstructions that clog the change of constitutions. In such circumstances silence itself is the declaration of a policy."

In other jurisdictions the law says in so many words that evidence obtained in contravention of the prohibition of unreasonable search and seizure shall not be admissible. A similar result is now being sought in our own State through statutory enactment. In the recent Constitutional Convention it was attempted to add to what is now section 12 of the State Constitution language to the effect that evidence obtained in violation of its provisions should be inadmissible. This attempt did not succeed. A proposed constitutional amendment was offered (Proposed Amendments, vol. 2, Introductory No. 3, Print No. 555) containing the following language: "Any evidence secured or obtained in violation of this section shall be inadmissible upon any trial, civil or criminal, or in any proceeding whatsoever."

Emphatic and successful objection to the inclusion of such language in the Constitution came from prosecuting officers and from a distinguished and learned judicial officer who was a delegate in the Convention.

Governor Lehman, in his message to the Constitutional Convention, said, in part: " After careful thought and consideration I have reached the strong belief that a provision should be included in the State Constitution which will safeguard each citizen against unreasonable searches and seizures of his home, business premises, papers and effects and that will also protect each citizen against wire-tapping of his telephone conversations and interception of telegraph messages except upon order of court. In order to make such a provision effective, the State Constitution should definitely require that any evidence obtained in violation of the constitutional guarantee shall not be admissible in any judicial or other proceedings." (N. Y. State Const. Convention [Revised Record], vol. 1, p. 336.)

Of course, the Constitutional Convention did not do this. The logic of what was said in the *Defore* case about the statute, namely, section 8 of the Civil Rights Law, applies with no less force to section 12 of article 1 of the New York State Constitution: " The truth indeed is that the statute says nothing about consequences. It does no more than deny a privilege. Denying this, it stops. Intrusion without privilege has certain liabilities and penalties. The statute does not assume to alter or increase them. No scrutiny of its text can ever evoke additional consequences by a

mere process of construction. We must attach them, if at all, because some public policy, adequately revealed, would otherwise be thwarted. But adequate revelation of such a policy it is surely hard to see. This would have been true in the beginning before the courts had spoken. It is more plainly true today." Incidentally, the United States Supreme Court refused certiorari in the *Defore* case.

The New York State Constitutional Convention Committee prepared and published a series of volumes in 1938 entitled: " Problems Relating to Bill of Rights and General Welfare." In volume 6 of the series, chapter 15, under the title of " Searches and Seizures," at page 216, it is stated: " It should be kept in mind, however, that the only difference between a constitutional guarantee and a statutory one is the fact that the latter may be changed by a subsequent statute, whereas a constitutional provision can be altered or repealed only through a constitutional amendment. There have been no instances of attempt to restrict the guarantee against unreasonable searches and seizures in the New York Civil Rights Law by subsequent statute, nor does the interpretation which has been given to the statute appear to have been in any way affected by the fact that the provision is incorporated in a statute rather than in a constitutional provision." Continuing, at page 220: " Incorporation of the provision in its present terms into the Constitution, it is suggested, will protect it from statutory invasion, but will do nothing to broaden its interpretation."

As was pointed out in the *Defore* case (*supra*, at p. 19), the officer guilty of the trespass resulting in the obtaining of the evidence " might have been resisted, or sued for damages, or even prosecuted for oppression (Penal Law, §§ 1846, 1847). He was subject to removal or other discipline at the hands of his superiors. These consequences are undisputed. The defendant would add another."

The remedies available to the defendant do not include exclusion of the damaging evidence.

Notwithstanding the foregoing, the People have not established a *prima facie* case, and the defendant's motion for a dismissal of the complaint and his discharge is, therefore, granted.