**BOARD OF LICENSE COMMISSIONERS OF the TOWN OF TIVERTON**

v.

**Louis H. PASTORE et al.**

**No. 80–426–M.P.**

Supreme Court of Rhode Island.

July 18, 1983.

Kathaleen Managhan, Patrick O. Hayes, Jr., Newport, for petitioner.

Angelo R. Marocco, Providence, for respondents.

## OPINION

WEISBERGER, Justice.

This case comes before us on petition for certiorari seeking review of a Superior Court judgment that affirmed a ruling of the Liquor Control Administrator reinstating the class-BV liquor license of the Attic Lounge (the Lounge). The only issue before this court is whether evidence obtained pursuant to an illegal search and seizure is admissible in a liquor-license revocation hearing. We find that the trial justice committed no reversible error. Accordingly, we affirm.

The facts in this case may be briefly summarized as follows. On March 11, 1977, a Tiverton police sergeant, pursuant to a search warrant, entered and searched the Lounge. He discovered stolen property on the premises. Thereafter, the Board of License Commissioners of the Town of Tiverton (the board), held a hearing at which the Lounge failed to show cause why its liquor license should not be suspended for permitting state law to be violated, pursuant to G.L. 1956 (1976 Reenactment) § 3–5–23. The board voted to revoke the establishment's liquor license, thereby prompting an appeal to the State Liquor Control Administrator (the administrator). During the pendency of this appeal, a Superior Court justice, in a criminal proceeding stemming from the same incident, ruled that the search of the Lounge was illegal.

Pursuant to respondent's appeal, the administrator held a de novo hearing on July 6, 1978. Therein undisputed testimony was introduced establishing that a conviction for possession of stolen property had never been obtained against any individual associated with the Lounge. The administrator therefore refused to entertain any evidence concerning the search of the premises or the results thereof. Accordingly, he found that because a conviction for receiving stolen goods had never been obtained, there was no justification for revocation of the Lounge's liquor license. He therefore ordered that the license be reinstated.

Thereafter, petitioners filed an appeal to the Superior Court, which affirmed the administrator's ruling. The Superior Court justice disagreed with the rationale utilized by the administrator, however, when she found that a conviction was not necessary to revoke a liquor license pursuant to G.L. 1956 (1976 Reenactment) § 3–5–23. Nevertheless, the court held that since the search of respondent's premises was illegal in nature any evidence or testimony concerning the search was properly excluded by the administrator.

The petitioners contend that the exclusionary rule should not be applicable in a liquor-license revocation hearing. Although we have not heretofore passed upon this issue, courts elsewhere have ruled the evidence inadmissible. We agree with that result.

The exclusionary rule, which bars the admission in a criminal trial of evidence obtained by an illegal search and seizure, was first promulgated by the United States Supreme Court in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and was later extended in application to state criminal proceedings by the decision in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). A precise overall definition of the type of proceeding, other than criminal, to which the rule should be applied has not yet been determined. Indeed, the Supreme Court has not yet decided whether the exclusionary rule will be construed to apply to administrative hearings. 1 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 1.5 at 97 (1978). Nonetheless, by reference to Supreme Court decisions on related matters and to persuasive precedent from other jurisdictions, we feel that there is a sufficient basis upon which to conclude that the exclusionary rule is applicable to a liquor-license revocation hearing. *Id.,* § 1.5 at 97–98.

In *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the State of Pennsylvania sought to confiscate a vehicle pursuant to a statute that provided for

the forfeiture of a vehicle carrying unsealed liquor. However, in criminal proceedings, the owner was acquitted because of the exclusion of the illegally seized liquor. The Court held that although forfeiture proceedings are civil in nature, the exclusionary rule should apply. Quoting with approval language from *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746, 752 (1886), the Court held that

> "[i]f the government prosecutor elects to waive an indictment, and to file a civil information against the claimants,—that is, civil in form,—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is in substance and effect a criminal one. * * As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution * * *."

380 U.S. at 697–98, 85 S.Ct. at 1249, 14 L.Ed.2d at 173.

Thus *Plymouth Sedan* stands for the proposition that the exclusionary rule should apply to proceedings that are " 'quasi-criminal' in character" in that their object "is to penalize for the commission of an offense against the law." 1 LaFave, § 1.5 at 98. Accordingly, it is reasonable to conclude that the exclusionary rule applies in administrative proceedings, wherein a state agency, responsible for control of liquor sales, is empowered to impose fines or declare forfeitures of licenses for criminal acts and other violations by those operating or connected with the establishment. *Id.* Professor LaFave comments that the Court in *Plymouth Sedan* indicated that a forfeiture proceeding could result in punishment greater than the criminal prosecution for the underlying conduct. This strongly suggests that a highly relevant factor to be considered is the magnitude of the consequences for the individual involved. Therefore, other courts have appropriately stressed the seriousness of taking away a person's license to operate an establishment selling liquor. *Finn's Liquor Shop v. State Liquor Authority,* 24 N.Y.2d 647, 249 N.E.2d 440, 301 N.Y.S.2d 584, *cert. denied,* 396 U.S. 840, 90 S.Ct. 103, 24 L.Ed.2d 91 (1969); *Leogrande v. State Liquor Authority,* 25 A.D.2d 225, 268 N.Y.S.2d 433 (1966), *rev'd on other grounds,* 19 N.Y.2d 418, 227 N.E.2d 302, 280 N.Y.S.2d 381 (1967); *Pennsylvania Liquor Control Board v. Leonardziak,* 210 Pa.Super. 511, 233 A.2d 606 (1967). Thus, "it would be anomalous * * * to hold that in [a] criminal proceeding, illegally seized evidence is excludable, while in [a] forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." *Plymouth Sedan,* 380 U.S. at 701, 85 S.Ct. at 1251, 14 L.Ed.2d at 175.

In *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the approach of the Court was to balance the potential benefits of applying the exclusionary rule, namely the added deterrence, against the potential damage from such application. Hence, a second important consideration in determining whether the exclusionary rule should apply in administrative proceedings is the extent to which exclusion would deter illegal searches and seizures. Thus, exclusion for purposes of deterrence would be justified if admission of the evidence could be expected to encourage future illegal searches by such agents because of their expectation that in any event the evidence would be admissible in the administrative process.

Various state courts have considered this issue. In *Finn's Liquor Shop v. State Liquor Authority, supra,* the New York Court of Appeals held that the exclusionary rule, concerning illegally seized evidence is applicable to administrative proceedings before the State Liquor Authority with respect to imposition of penalties on license holders. The court in its opinion stated that if the

exclusionary rule is to be effective, it may not be limited to purely criminal proceedings. The court declared that "[i]t is no longer subject to question that [s]tate agencies charged with purely administrative responsibilities, just as those engaged in the enforcement of the criminal law, must conduct their investigative and enforcement functions in compliance with constitutional requirements and, more particularly, within the confines of the Fourth Amendment. (*See, Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967))." *Finn's Liquor Shop,* 24 N.Y.2d at 654, 249 N.E.2d at 442–43, 301 N.Y.S.2d at 588.

In *Leogrande v. State Liquor Authority, supra,* the Appellate Division of the New York Supreme Court held that evidence obtained by search warrants indicating that the licensee engaged in gambling activities on and off the licensed premises could not be used by the State Liquor Authority as a basis for the cancelation of an establishment's license when the search warrants in related criminal cases had been vacated for want of probable cause. In so holding the court stated that "the reasons in policy which [support] the application of the exclusionary rule to illegal searches and seizures by public officers in criminal proceedings apply equally to administrative proceedings." 25 A.D.2d at 231, 268 N.Y.S.2d at 440. Such proceedings include those involving penalties, forfeitures or other sanctions for the violation of law. "The exclusionary rule rests on a theory of deterrence; that policy would not be served if the illegal official activity could be used, despite unavailability in criminal proceedings, to effect parallel sanctions of forfeiture in an administrative proceeding." *Id.* at 232, 268 N.Y. S.2d at 440.

The applicability and rationale behind the use of the exclusionary rule in liquor-board administrative hearings is further set forth in *Pennsylvania Liquor Control Board v. Leonardziak, supra.* Therein the court held that

"[t]he purpose of the exclusionary rule is ' * * * to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.' *Elkins v. United States,* 364 U.S. 206, 217 [80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669] (1960). The policy of deterring unconstitutional activity by suppressing evidence would not be served if police, after being barred from using evidence against a licensee in a criminal court, could use the identical evidence to punish with equal or greater severity through the machinery of the Liquor Control Board." 210 Pa.Super. at 514, 233 A.2d at 608.

For these reasons, we believe that it is certainly appropriate to apply the exclusionary rule in administrative proceedings when the police have searched premises known to be licensed for the sale of liquor and have turned over the fruits of the search to the administrative agency empowered to revoke the license. 1 LaFave, § 1.5 at 100. Accordingly, we hold that a board of liquor-license commissioners should not be permitted to avail itself of the fruits of an illegal search in order to impose sanctions upon the persons whose constitutional rights have been violated.

The petitioners contend, however, that the holding in *Plymouth Sedan,* is inapplicable to the present controversy. Their contention is based on the assertion that a proceeding that is quasi-criminal in nature is different from a liquor-license revocation hearing that is civil in nature. *Chernov Enterprises, Inc. v. Sarkas,* 109 R.I. 283, 284 A.2d 61 (1971); *Cesaroni v. Smith,* 98 R.I. 377, 202 A.2d 292 (1964). A careful analysis of the Supreme Court's definition of a quasi-criminal proceeding, however, reveals that this argument misses the mark. In *Plymouth Sedan* the Court, agreeing with the determination of Mr. Justice Bradley in *Boyd,* found that a forfeiture proceeding is quasi-criminal in nature in that its object is to penalize for the commission of an offense against the law. 380 U.S. at 700, 85 S.Ct. at 1250, 14 L.Ed.2d at 175.

Although technically a civil proceeding, a license revocation based on an illegal search and seizure to uncover stolen goods is in substance and effect a quasi-criminal proceeding since its object is to penalize for the commission of an offense against the law, thereby invoking the application of the exclusionary rule.

The petitioners further suggest that *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), provides support to a jurisdiction hesitant about expanding the scope of the exclusionary rule. We do not concur. In *Janis,* the Supreme Court held that evidence seized by a state criminal-law-enforcement officer in good faith, but nonetheless in an unconstitutional manner is admissible in a civil proceeding brought by or against the United States. The Court distinguished between two types of situations for the purpose of applying the exclusionary rule in civil proceedings: (1) those cases in which the officer committing the unconstitutional search or seizure was an agent of the sovereign that sought to use the evidence (intrasovereign) and (2) those cases in which the officer had no responsibility or duty to, or agreement with, the sovereign seeking to use the evidence (intersovereign). However, the Court specifically declined to rule on the applicability of the exclusionary rule in an intrasovereign setting, which is the situation before us on review. Nevertheless, we believe that the potential deterrent effect of the exclusionary rule on the agents of an intrasovereign agency is strong enough to outweigh the costs to society of refusing to admit evidence obtained in violation of constitutional imperatives. *See* 1 Ringel, *Searches & Seizures, Arrests and Confessions,* § 3.6(c) at 3–32 (1982).

Our view is supported by the recent decision in *Lopez-Mendoza v. Immigration and Naturalization Service,* 705 F.2d 1059 (9th Cir.1983), which dealt with the intrasover-

eign situation enunciated in *Janis.*[1] The court held that when an "offending officer and the prosecutor share a common goal, the deterrent effect of the exclusionary sanction is maximized: an officer will have little incentive to violate the Fourth Amendment if he knows that tainted evidence will be worthless to the prosecutorial agency he serves." *Id.* at 1069.

The petitioners, in support of their position that the exclusionary rule should not apply to liquor-license revocation hearings, urge us to utilize the same rationale that we used in *State v. Spratt,* 120 R.I. 192, 386 A.2d 1094 (1978), and *Bridges v. Superior Court,* 121 R.I. 101, 396 A.2d 97 (1978). We are not so persuaded. In *Spratt,* the question of the application of the exclusionary rule was confronted in the context of a probation-revocation hearing whereas in *Bridges* we dealt with this issue in the context of a bail-revocation proceeding. Obviously, the prospect of having either a convicted violator or an individual charged with a crime who has violated the conditions of his bail escape the consequences of his or her actions by application of the exclusionary rule would pose a substantial threat to society. Although the state has an interest in the proper conduct of enterprises licensed for the sale and distribution of alcoholic beverages, such interest does not weigh so heavily in determining the applicability of the exclusionary rule as does the appropriate supervision of persons who are on bail after having been formally charged with the commission of criminal offenses or on probation after having been convicted of a criminal offense. Furthermore, in deciding that the exclusionary rule should not apply in *Spratt* and *Bridges,* we enunciated the test to be used when we said:

"[C]onsider whether any increased deterrence of future police misconduct would

1. Concededly, *Lopez-Mendoza v. Immigration and Naturalization Service,* 705 F.2d 1059 (9th Cir.1983), has a more compelling fact pattern than the case at bar to apply the exclusionary rule, because the Ninth Circuit court was deal-

ing with a situation that not only was intrasovereign but also was intra-agency (Immigration and Naturalization Service). The general principles enunciated in that case, however, are applicable to the present controversy.

result from extending the rule and then balance that incremental increase against the risks to society that extension is likely to produce." 120 R.I. at 194, 386 A.2d at 1095.

In *Mapp* the Supreme Court of the United States emphasized that the deterrence of police misconduct and the policy that the government should not benefit from its own wrongdoing are to be accorded great weight in this balancing process. Therefore, the Superior Court properly analyzed the effect of this balancing test on the issue at bar by concluding that evidence obtained as a result of an illegal police search is inadmissible at a hearing before the administrator.

Finally, petitioners contend that there is legislative justification for the admission of improperly obtained evidence in liquor-license revocation hearings. The petitioners cite G.L. 1956 (1977 Reenactment) §§ 3–12–3 and 3–2–6 in support of this proposition. We believe that petitioners misconceive the thrust of these statutes and tend to confuse the question of right of access to the premises with the question of applicability of the exclusionary rule. Section 3–2–6 authorizes access by inspectors or other officers charged with the duty of supervision or inspection of places licensed to deal in alcoholic beverages. Section 3–12–3 provides that municipal officials, which term includes but is not limited to police officers, and members of the state police, may enter the premises of licensed premises "to ascertain the manner in which such person conducts his business and to preserve order." These statutes allow a right of access to licensed premises for the purpose of enforcing those statutes and regulations that relate to the conduct of licensed liquor establishments. Obviously, while such officers are properly upon the premises, they may act appropriately in respect to any violations of law that are committed in their presence or may act in re-

spect to any evidence that may properly be within plain view. *See Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

In this case, however, we are not confronted with the question of the propriety of the search and seizure that was allegedly conducted by a police officer of the town of Tiverton. The police officer obtained a traditional criminal search warrant, and this search warrant was declared to be constitutionally infirm by a justice of a court of competent jurisdiction. Thus, the question of the validity of this search and seizure is not presently before this court.[2]

The sole question before us is whether evidence found by a court to be illegally obtained may be admitted in a proceeding for forfeiture of a license before the administrator. We hold that the exclusionary rule is applicable to such hearings and that evidence determined by a court or by the administrator to have been illegally obtained may not be admitted.

For the reasons stated, the petition for certiorari is denied. The writ heretofore issued is quashed. The judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court with our decision endorsed thereon.

---

**2.** We recognize that the criteria for searches of regulated premises are less stringent than those applicable to other structures. *See United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (gun licensee); *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor licensee).