STATE of Rhode Island

v.

ONE 1990 CHEVROLET CORVETTE
VIN: 1G1YY3388L5111488.

No. 95–138–Appeal.

Supreme Court of Rhode Island.

June 13, 1997.

Aaron L. Weisman, Bruce R. Astrachan, Providence, for Plaintiff.

David N. Cicilline, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This is the state's appeal from a final judgment of the Superior Court dismissing the state's appeal to that court from a final judgment of the Sixth Division District Court that had dismissed its civil in rem forfeiture proceeding commenced there pursuant to G.L.1956 § 21–28–5.04.2.

### Case Facts and Procedural History

The pertinent facts and procedural history of this case show that on November 5, 1992, the state filed a civil in rem complaint in the Sixth Division District Court, alleging that the defendant vehicle, a 1990 Chevrolet Corvette (Corvette), was purchased by Oscar Caba (Caba) with proceeds derived from the illegal sales of controlled substances and therefore subject to civil forfeiture under § 21–28–5.04.2. In response to the state's complaint for forfeiture, Jacqueline Francisco (Francisco or claimant), Caba's sister, filed an answer, asserting therein that she was the innocent owner of the Corvette and that it had not been purchased with drug proceeds and praying that the forfeiture be denied. In accordance with the civil forfeiture statute, a hearing was held before a judge of the Sixth Division District Court to determine whether the Corvette was subject to forfeiture.

At that hearing the state presented evidence showing that on April 2, 1992 the Corvette was seized following the execution of a search warrant at Caba's East Providence residence. During that search police recovered heroin, money, and original purchase records in the name of Caba relating to the Corvette. It was shown that Francisco did not live with Caba but that the Corvette had nonetheless remained at Caba's home for some three months from December 1991 until the execution of the search warrant on March 20, 1992. Additionally the state offered evidence that Caba alone had negotiated the purchase of the Corvette, that he paid $19,500 in cash for the vehicle, and that in March of 1992 he had attempted to obtain a Florida registration for the vehicle in the name "Jackeline Francisco" through an accomplice of Caba's in the heroin trafficking enterprise alleged against Caba. Francisco, however, testified that she had asked her brother to purchase the Corvette for her because of her inexperience in car buying. She further testified that she borrowed and then gave her brother the money with which to purchase the Corvette. The District Court judge found that the state had not established probable cause to show that the Corvette had been purchased with drug proceeds and on November 5, 1993 entered a judgment in favor of Francisco and ordered the Corvette to be returned to her.

Following entry of the District Court final judgment, the state then filed its notice of appeal to the Providence County Superior Court pursuant to § 21–28–5.04.2(j)(1). The claimant, however, moved to dismiss the appeal on the grounds that the civil in rem forfeiture statute did not provide the state any right to appeal and additionally that the appeal was prohibited by both state and federal constitution double jeopardy clauses. That motion was heard before a justice in the Superior Court. She dismissed the appeal, agreeing that § 21–28–5.04.2 did not grant the state a right of appeal and that the state and federal double jeopardy clauses prohibited such an appeal. In deciding the double jeopardy question, she characterized the civil in rem forfeiture proceeding as quasi-criminal and thus concluded that the state was not allowed to appeal from the adverse ruling, citing *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

### The Statutory Objection

■ We first address the question of whether the General Assembly granted the state a right of appeal when it enacted Rhode Island's civil in rem forfeiture law, § 21–28–5.04.2. It is well settled in this state that the construction of statutes is a matter reserved for the courts and that the Supreme Court is the final arbiter of questions of statutory construction. *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 872 (R.I.1987); *accord State v. Powers*, 644 A.2d 828, 830 (R.I.1994). In that role our aim is to "establish and effectuate the legislative intent behind the enactment." 644 A.2d at 830.

■ The language of concern in this appeal is found in § 21–28–5.04.2(j)(1). It provides that "[a]n appeal may be claimed by either party from any judgment of forfeiture rendered by the district court, to be taken in like manner as by defendants in criminal cases within the jurisdiction of the district court to try and determine * * *." Identical language is found in G.L.1956 § 12–21–30. We conclude that by using the phrase "either party" the General Assembly intended to give the state a right of appeal. Although it is the property that is being acted against in a civil in rem forfeiture case, the only parties litigating the issue of forfeiture are the state and any claimant. Therefore, when the statute speaks of "either party," it must mean the state and/or a claimant.

Our interpretation is not affected by the additional language in § 21–28–5.04.2(j)(1) that allows an appeal to either party from "any judgment of forfeiture." Even though that language might suggest that an appeal is available to either party only after there has been a judgment in which the property has been forfeited to the state, such an interpretation would render the words "either party" mere surplusage because it would only be the aggrieved claimant who would want to appeal from a "judgment of forfeiture." We believe that it is best then to construe the language "any judgment of forfeiture" to mean "any judgment *concerning* a forfeiture." By construing the statute to mean "concerning" a forfeiture we conclude that we "better fulfill the purpose of the statute." *See, e.g., Rice Machinery, Inc. v. Norberg*, 120 R.I. 542, 550, 391 A.2d 66, 71 (1978).

We are also not willing to accept claimant's contention that the phrase contained in § 21–28–5.04.2(j)(1) that requires appeals "to be taken in like manner as by defendants in criminal cases" requires a contrary interpretation. The claimant suggests that the state is generally not given a right of appeal in criminal cases and that thus the appeal process in a civil in rem forfeiture proceeding should follow the "manner" of criminal cases and not allow the state any opportunity for appeal. We find this to be an awkward reading of the statute and believe that the word "manner" is more properly understood as speaking to the *procedure* to be followed in taking an appeal. The claimant's argument additionally lacks merit since it merely begs the question rather than answer it. It is well settled that the state in certain instances has statutory authority to claim appeals in criminal proceedings. *State v. Alexander*, 115 R.I. 491, 493–94, 348 A.2d 368, 370 (1975).

Finally, we are unpersuaded by claimant's contention that under § 21–28–5.04.2(*o*) the General Assembly evidenced an intent to preclude the state's appeal in civil in rem

forfeiture cases by requiring the property to be returned to the claimant forthwith after a judgment against the state. The claimant suggests that the return of the property evinces an intention that the case should proceed no further. We believe, however, that the General Assembly did not intend the property to be returned until after the appellate process had been concluded, knowing that the state's appeal would serve to stay the District Court's order. *See* Dist. R. Civ. P. 62, 73.

### The Double Jeopardy Issue

We next consider the double jeopardy issue raised by claimant. She contends that even if the General Assembly intended to give the state a right of appeal from an adverse judgment in a civil in rem forfeiture proceeding, the double jeopardy clauses of the United States Constitution[1] and the Rhode Island Constitution[2] prohibit such an appeal. She suggests that the appeal would constitute a forbidden "successive prosecution."

■ In considering this contention, we note that the double jeopardy clause contained in the Fifth Amendment to the United States Constitution is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969). Additionally we have interpreted our state constitutional prohibition against double jeopardy in a manner consistent with the Federal Constitution, *see, e.g., State v. One Lot of $8,560 in U.S. Currency*, 670 A.2d 772 (R.I.1996), so that our inquiry is ultimately the same under either clause. We shall presume a legislative act to be valid and constitutional and require the challenging party to bear the burden of persuading this Court that the statute violates an identifiable aspect of the state or the federal Constitution. *Rhode Island Depositors Economic Protection Corp. v. Brown*, 659 A.2d 95, 100 (R.I. 1995).

■ It has long been recognized by the United States Supreme Court that the double jeopardy clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (1989); *see North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969). Distilled to its core components, that Court has said the clause prevents " 'successive punishments and * * * successive prosecutions.' " *United States v. Ursery*, —— U.S. ——, ——, 116 S.Ct. 2135, 2139, 135 L.Ed.2d 549, 558 (1996). We too have recognized that the clause protects a "complex of rights." *State v. Torres*, 524 A.2d 1120, 1123 (R.I.1987).

The factual circumstances that over time have proven incompatible with the "complex of rights" protected by the double jeopardy clause have varied widely. However, whether involving the multiple punishment component, *see State v. One Lot of $8,560 in U.S. Currency*, 670 A.2d 772 (R.I.1996), or successive prosecutions, *see State v. Grabowski*, 644 A.2d 1282 (R.I.1994), these double jeopardy cases have always involved some sort of criminal prosecution. The United States Supreme Court made it clear in *Breed v. Jones* that "[j]eopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed v. Jones*, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346, 354 (1975); *see also Helvering v. Mitchell*, 303 U.S. 391, 398–99, 58 S.Ct. 630, 633, 82 L.Ed. 917, 921 (1938). This Court has adhered to that principle. *See Grabowski*, 644 A.2d at 1286 ("[t]he double jeopardy clause applies only to proceedings that are ' "essentially criminal." ' ").

■ Thus it was in *Ventures Management Co., Inc. v. Geruso*, 434 A.2d 252 (R.I.1981),

---

1. The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

2. The double jeopardy clause of the Rhode Island Constitution contained in article 1, section 7, provides: "No person shall be subject for the same offense to be twice put in jeopardy."

that we held that double jeopardy is inapplicable to a civil contempt proceeding. *Id.* at 254. Since the contempt proceeding at issue in that case was found to be civil rather than criminal, an appeal could properly be taken without implicating a double jeopardy concern. *Id.* Accordingly, in this case, unless there is state action amounting to a criminal prosecution, there is no proceeding to which double jeopardy would attach. *See also Milardo v. Coastal Resources Management Council,* 434 A.2d 266, 272 (R.I.1981).

■ Although arising in the context of the double jeopardy ban against multiple punishments, the United States Supreme Court's decision in *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), supports the view that the civil forfeiture proceeding in this case is not a criminal prosecution and thus raises no concern of a successive prosecution in violation of double jeopardy.[3] *See also United States v. One Parcel of Real Property with Buildings, Appurtenances, and Improvements, Known as 154 Manley Road, Located in Burrillville, Rhode Island,* 91 F.3d 1, 1 (1st Cir.1996) (holding that in rem forfeitures are neither "punishment" nor "criminal" for purposes of double jeopardy and that thus double jeopardy analysis is inapplicable). In *Ursery,* after instituting civil forfeiture claims against various pieces of property, the federal government sought to prosecute the owners of those properties criminally. The defendants in *Ursery* argued that the civil forfeiture proceedings constituted punishment so that the subsequent criminal prosecutions were barred by the double jeopardy clause.

In responding to this argument, the Court made it a clear that a civil forfeiture proceeding was an in rem proceeding against a physical object and thus distinguishable from an in personam criminal prosecution. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2140, 135 L.Ed.2d at 559 (citing *Various Items of Personal Property v. United States,* 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931)). It acknowledged that only in the rarest instances would an in rem proceeding be " 'so punitive in either purpose or effect' as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause." *Ursery,* —— U.S. at —— n. 3, 116 S.Ct. at 2148 n. 3, 135 L.Ed.2d at 569 n. 3.

■ The Court in *Ursery* applied a two part test to consider whether the civil forfeiture proceedings in that case were part of that rare breed of case so sufficiently punitive as to amount to a criminal prosecution for double jeopardy analysis. *Id.* at ——, 116 S.Ct. at 2147, 135 L.Ed.2d at 568. Because we find it helpful, we adopt that analysis. Under the first prong we consider whether the legislative intention of the proceedings was to be criminal or civil. Next we examine "whether the proceedings are so punitive in fact as to 'persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' " despite contrary legislative intent. *Id.*

In this instant case, as was the case in *Ursery,* the legislative intent was to make the in rem proceedings clearly civil. In examining § 21–28–5.04.2, we see that it is entitled "Civil forfeiture procedure" as opposed to § 21–28–5.04.1, which is entitled "Criminal forfeiture procedures." The statute clearly states that the proceedings are to be in the nature of a civil in rem action and shall be governed by our civil action rules for in rem proceedings, thus distinguishing them from a traditional *in personam* criminal prosecution. We believe the statutory language signals the clear legislative intent that these forfeiture proceedings are to be civil in nature rather than criminal.

Under our two step inquiry we next look at the effect of the proceedings to see if they are so punitive as to be criminal despite the legislative intent. We believe that the statute serves important remedial rather than punitive goals. This point is perhaps best illustrated by the fact that the property forfeited is distributed primarily to the law enforcement agencies concerned in the appre-

---

**3.** It is uncontroverted that in this case claimant has not been punished for any wrongdoing, so we are not concerned with an issue of successive punishments. *See generally United States v. Hal-* *per,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (distinguishing successive prosecution cases from successive punishment cases).

hension of the individuals involved in the particular criminal activity in proportion to those agencies' "contribution to the investigation of the criminal activity related to the asset being forfeited." G.L.1956 § 21–28–5.04(b)(3)(A)(ii)–(iii). In this way the state deprives the criminal of the profits of his or her crime and reimburses the public exchequer for its moneys expended in apprehending the property and the criminal. These are certainly both remedial goals. Relying on this inquiry, we conclude that the civil forfeiture proceeding in the case before us is civil and does not implicate the double jeopardy clause.

The claimant's reliance on *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), is misplaced. There the Court made it quite clear that the state was prohibited from appealing a criminal prosecution resulting in the defendant's acquittal. *Id.* at 129, 101 S.Ct. at 433, 66 L.Ed.2d at 341. That case, because it dealt with a criminal prosecution against an individual, is inapposite. This case is simply an appeal in a civil proceeding against property and as such is not subject to double jeopardy. *See Ventures Management Co., supra.* Notwithstanding, claimant urges that we view the civil in rem forfeiture proceeding in this case to be quasi-criminal in nature such that double jeopardy protections should apply. She points to *Board of License Commissioners of Tiverton v. Pastore*, 463 A.2d 161 (R.I.1983). We do not find that case persuasive in this context. There we held that a liquor license revocation proceeding was quasi-criminal so that the Fourth Amendment exclusionary rule should be applied to the fruit of an illegal search. *Id.* at 166. That case is distinguishable for several reasons. First, it is clear that merely because a proceeding has been deemed quasi-criminal and worthy of one constitutional guarantee does not mean that it is bound by all constitutional guarantees. *See United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Second, *Pastore* dealt with a liquor license revocation hearing, a proceeding that we believe is clearly distinguishable from an in rem civil forfeiture proceeding. In the license revocation hearing the proceeding is against the license holder

and does not reimburse any state authority. Finally, *Pastore* decided that the liquor license revocation hearing was quasi-criminal largely on the basis of the United States Supreme Court decision *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), wherein that Court held that a civil forfeiture proceeding is quasi-criminal for the purposes of the Fourth Amendment. That case is of dubious authority in light of *Ursery*. Thus, while we continue to believe that the liquor license revocation hearing in *Pastore* was quasi-criminal for purposes of the Fourth Amendment, under *Ursery* we conclude that a civil in rem forfeiture proceeding such as is involved here is not *per se* quasi-criminal, for purposes of the double jeopardy clause.

The claimant also relies on *DiFrancesco* by raising the specter that allowing an appeal on these facts will merely give the state, with all its resources and power, a second chance to attempt to prove that the Corvette in question was purchased with drug-related moneys. *DiFrancesco*, 449 U.S. at 127–28, 101 S.Ct. at 432, 66 L.Ed.2d at 339. We believe this rationale sweeps too far and is unacceptable to us. If we were to carry claimant's argument to its logical conclusion, we would be required to prohibit the state from appealing in any proceeding, civil or criminal, because any appeal would almost always provide the state a second chance to prove its case. *DiFrancesco* cannot be read so broadly, and its rationale must be limited to the context of a criminal prosecution.

We point out parenthetically that at oral argument the question was raised concerning whether *Ursery* alters what we said last term in *One Lot*. We conclude that it does. At the time we rendered our decision in *One Lot*, the courts in general, both state and federal, were uncertain about the appropriate analysis to be used in deciding double jeopardy claims in the context of a civil in rem forfeiture proceeding. In *One Lot* we concluded that *Halper*'s analysis was then still controlling for these cases. *Ursery* has subsequently made it clear, however, that an in rem civil forfeiture proceeding, as we have here, is unique. To the extent *One Lot* held that

*Halper* guides our double jeopardy analysis for civil in rem forfeiture proceedings, it is no longer controlling.

For these reasons we conclude that the state is empowered under Rhode Island's civil forfeiture statute to appeal from the adverse judgment entered by the District Court and that the state and federal double jeopardy clauses do not prohibit such an appeal. The state's appeal is sustained, the Superior Court's final judgment is vacated, and the case file and papers are remanded to that court for trial de novo on the state's appeal from the District Court judgment.

GOLDBERG, J., did not participate.