STATE

v.

ONE LOT OF $8,560 in U.S.
CURRENCY et al.

Nos. 94–655 to 94–660–Appeal.

Supreme Court of Rhode Island.

Feb. 5, 1996.

Bruce R. Astrachan, Special Asst. Atty. General, for Plaintiff.

David Ciccilline, for Defendant.

## OPINION

WEISBERGER, Chief Justice.

These six consolidated cases [1] come before us on a certified question presented by a justice of the Superior Court. The question reads as follows:

> "Whether Double Jeopardy's ban on multiple punishments prohibits the State of Rhode Island from pursuing the civil forfeiture of suspected proceeds of illegal drug transactions, which proceeds are claimed by the individual previously convicted of unlawful delivery of a controlled substance?"

1. There was an additional case relating to the proposed forfeiture of real estate located at 23 Tabor Drive in Johnston, Rhode Island. However, at oral argument both parties agreed that the certified question in respect to this case need not be answered. A justice of the Superior Court had dismissed the forfeiture proceeding on Eighth Amendment grounds.

All six cases involve similar, though not identical, fact patterns. The owners of the property proposed to be forfeited (claimants) were each charged by criminal information with violations of the Uniform Controlled Substances Act, G.L.1956 (1989 Reenactment) § 21–28–4.01, as amended by P.L.1992, ch. 418, § 4. In each case the claimant pled nolo contendere to the charge in response to which suspended sentences of varying terms were imposed. In each case claimant was placed on probation for a period equal to the term of the sentence imposed. Either before or after the imposition of the suspended sentences, the state filed a complaint in rem in each case in the District Court, seeking forfeiture of currency or personal property that consisted either of the instrumentality used in connection with the criminal conduct or the proceeds of the drug traffic upon which the information was based.

Thereafter, claimants challenged the forfeiture and appealed to the Superior Court asserting that the ban on double jeopardy contained in the Fifth Amendment to the Constitution of the United States barred the forfeiture in each case. As a result of these claims, the certified question was presented to this court. The issue of the effect of the double-jeopardy limitation upon forfeiture proceedings has undergone significant change in recent years. The general rule prior to 1989 could be stated in substance that a ban on double jeopardy was inapplicable to forfeiture proceedings since they were civil as opposed to criminal in nature. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *see United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).

However, in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court considered a forfeiture proceeding that involved a shocking disparity between the gravity of the offenses and the amount of the forfeiture. The manager of a medical laboratory was convicted on multiple counts of defrauding the government by filing inflated Medicare claims. Subsequent to the conviction the government filed forfeiture proceedings under which it sought to recover a total of $2,000 for each of the sixty-five false claims, which action would have created a total potential recovery of $130,000. The actual loss to Blue Cross, acting as the intermediary for Medicare, amounted to $585. In the face of this disproportionate claim for recovery Justice Blackmun, writing on behalf of the Court, determined that the multiple punishment aspect of the double-jeopardy clause prohibited a forfeiture that was punitive as opposed to remedial in nature. After reviewing a number of forfeiture cases, the Court observed:

"The relevant teaching of these cases is that the Government is entitled to rough remedial justice, that is, it may demand compensation according to somewhat imprecise formulas, such, as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment for the purpose of double jeopardy analysis." *Halper,* 490 U.S. at 446, 109 S.Ct. at 1900, 104 L.Ed.2d at 500.

After analyzing the facts, the Court summarized its holding in the following terms:

"We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction *to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.*" (Emphasis added.) *Id.* at 448–49, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

The Court then went on to remand the case to the District Court to determine an amount to which the government might be entitled in terms of its demonstrated costs with the admonition that "the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice." *Id.* at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

Under the holding in *Halper,* it would appear that the government or the state in forfeiture proceedings, even after the imposition of a criminal penalty, would be entitled to recover approximately the costs and damage incurred as a result of the criminal activity of a claimant.

However, here claimants argue that *Halper* has been *sub silentio* overruled, superseded, or modified by *Austin v. United States,* 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In that case the government initiated civil forfeiture proceedings against an auto body shop and mobile home in the United States District Court for the District of South Dakota after Austin had been sentenced in a South Dakota State Court pursuant to a guilty plea for one count of possessing cocaine with intent to distribute. It is significant to note that this case was presented to the Court on a claim that the forfeiture proceeding was in violation of the excessive-fines clause of the Eighth Amendment. Again Justice Blackmun, writing for a majority of the Court, held that a forfeiture proceeding was subject to the limitations contained in the excessive-fines clause and remanded the case in order that the Court of Appeals (and presumably the trial court) might consider the factors relevant to determining the amount by which the forfeiture might be considered excessive. The Court in footnote 14, 509 U.S. at —— n. 14, 113 S.Ct. at 2812 n. 14, 125 L.Ed.2d at 505 n. 14, did discuss its prior opinion in *Halper* but pointed out that the excessive-fines clause should apply to all forfeitures as well as to those that cannot be characterized as purely remedial. It is significant that the Court in footnote 14 stated that the clause prohibits only the imposition of excessive fines and that a fine that serves purely a remedial purpose cannot be considered excessive in any event. *Id.*

It is notable but not surprising that there was no discussion of the effect of this holding upon a double-jeopardy analysis. No such analysis would have been relevant because of the separate-sovereignties limitation upon the reach of the double-jeopardy clause. *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). These cases hold that a criminal penalty imposed by one sovereign entity does not preclude a criminal penalty's being imposed by another sovereign entity for the same offense.

Most recently in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Court was confronted with the challenge to the constitutionality of a tax imposed by the State of Montana upon the possession and storage of dangerous drugs, which tax is to be collected only after any state or federal fines or forfeitures have been established and imposed. This tax was measured either by 10 percent of the assessed market value of the drugs or by a specified amount, depending on the drug, such as $100 per ounce for marijuana and $250 per ounce for hashish, whichever is greater. Six members of the Kurth family, who operated a mixed grain and livestock farm in central Montana, began in 1986 to cultivate and sell marijuana. About two weeks after the new drug tax went into effect, Montana law enforcement officers raided the farm, arrested the six respondents, and confiscated the marijuana plants along with assorted materials and paraphernalia. The respondents ultimately entered into a plea agreement, and on July 18, 1988, two members of the Kurth family were sentenced to imprisonment. The remaining members were subjected to suspended or deferred sentences. The county attorney filed a civil forfeiture action that sought recovery of cash and equipment used in the marijuana operation. This forfeiture action was settled by an agreement to forfeit $18,016.83 in cash and various items of equipment.

A third proceeding involved the assessment of the new tax. Ultimately the Department of Revenue sought to collect nearly $900,000 in taxes on marijuana plants, harvested marijuana, hash tar, and hash oil, along with interest and penalties. In the face of this attempt at taxation, the Kurths applied for relief under chapter 11 of the Federal Bankruptcy Code. The Bankruptcy Court determined after trial that an assessment of $181,000 on 1,811 ounces of harvested marijuana was authorized by the act. The Bankruptcy Court went on to hold that the assessment was invalid as a form of double jeopardy under the analysis provided by *United States v. Halper, supra.* The Bankruptcy Court, after noting that a portion of

the assessment resulted in a tax eight times the product's market value, held that the purpose of the drug tax was deterrence and punishment. *Kurth Ranch*, 511 U.S. at ——, 114 S.Ct. at 1943, 128 L.Ed.2d at 775. No attempt was made by the state to provide an accounting of its actual damages or costs. The District Court and the Court of Appeals for the Ninth Circuit affirmed the conclusions reached by the Bankruptcy Court.

While the case was pending in the federal courts, the Supreme Court of Montana reversed two lower state court decisions that had held that the Dangerous Drug Tax was a form of double jeopardy, *Sorensen v. State Department of Revenue*, 254 Mont. 61, 836 P.2d 29 (1992), holding that the tax had a remedial purpose other than promoting retribution and deterrence.

Justice Stevens, on certiorari from the decision of the Court of Appeals for the Ninth Circuit, writing for a majority of the Court, after an analysis of *United States v. Halper*, *supra*, held that the Montana tax was exceptional for several reasons. First, it was not designed to raise revenue. Second, it was "levied on goods that the taxpayer neither owns nor possesses when the tax [was] imposed" (the state presumably had destroyed the contraband goods before the tax was assessed). *Kurth Ranch*, 511 U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781. Third, "[a] tax on 'possession' of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character." *Id.* Justice Stevens summarized by stating that "[t]aken as a whole, this drug tax [was] a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* "The proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time 'for the same offence.'" *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 782. Chief Justice Rehnquist and Justice O'Connor filed dissenting opinions. Justice Scalia filed a dissenting opinion in which Justice Thomas joined.

The first question that this court must determine is whether the principles enunciated in *Halper* are controlling or whether *Austin* and *Kurth Ranch* have *sub silentio* superseded, overruled, or modified the holding in *Halper*. We believe that *Halper* is still the standard under which this certified question should be answered.

In the last thirty-five years the Supreme Court of the United States has overruled prior precedents on a number of occasions. For example, in the area of the Sixth Amendment right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), overruled *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). In the area of the Fifth Amendment right against self-incrimination, *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), specifically overruled *Adamson v. California*, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903 ( 1947), and *Twining v. New Jersey*, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908). In the area of double jeopardy *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), overruled *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). It is therefore apparent that the Supreme Court of the United States, when it wishes to do so, will explicitly overrule a prior case, even one of venerable vintage. It seems very unlikely to us that the Supreme Court would refrain from explicitly overruling a 1989 case in 1993 and 1994 if that were its intent. Consequently we believe that the standards enunciated in *Halper* should be applied to this certified question. This conclusion is buttressed by a close reading of Justice Stevens's opinion in which he utilizes the *Halper* analysis in concluding that the Montana tax bore no rational relationship to either a revenue-raising or a remedial purpose, even though the *Halper* case-by-case approach was applicable to a tax.

■ Under those standards we would answer the certified question by stating in the words of the *Halper* opinion that "a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be charac-

terized as remedial but only as a deterrent or retribution." [2] *Halper,* 490 U.S. at 448–49, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

■ We are unable, as was the United States Supreme Court, to determine the extent to which each of the cases that formed the basis for the certified question may involve a civil sanction that may not fairly be characterized as remedial. We consequently remand these cases to the Superior Court with directions to consider the amount by which the civil sanction in each case may be deemed to exceed an amount that is remedial. The state may not be allowed to collect a sum or compel forfeiture of an object whose value exceeds the remedial limit. In considering the amount that might be within the remedial limit, the Superior Court may consider the cost of apprehending and prosecuting each individual claimant as well as the cost in these cases of probationary supervision during the terms of probation imposed. The state may not consider in each case the cost of combating the drug traffic as a whole but only those costs that relate to the particular case at issue.

The papers in the consolidated cases may be remanded to the Superior Court for further proceedings consistent with this opinion.

[2]. The United States Courts of Appeals are in great disagreement in their interpretation of the effect of *Austin v. United States,* 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *Montana Department of Revenue v. Kurth Ranch,* 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). The Second Circuit continues to apply a *Halper* analysis. *United States v. Carson,* 52 F.3d 1173 (2nd Cir.1995); *United States v. Morgan,* 51 F.3d 1105 (2nd Cir.1995). The Ninth Circuit has in effect determined that all civil forfeitures in separate proceedings are now forbidden by the ban on double jeopardy. *United States v. $405,- 089.23 in U.S. Currency,* 33 F.3d 1210 (9th Cir. 1994). The Fifth Circuit continues to use a *Halper* analysis and further holds that in any event the ban on double jeopardy would not preclude the forfeiture of the proceeds of drug sales. *United States v. Tilley,* 18 F.3d 295 (5th Cir. 1994). We have chosen to draw our own interpretation directly from the cases decided by the United States Supreme Court, though we have found the analysis and reasoning of the Courts of Appeals to be helpful and illuminating.