USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 96-1002 WILLIAM L. TAYLOR, ET AL., Plaintiffs, Appellees, v. STATE OF RHODE ISLAND, ET AL., Defendants, Appellants.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________  ____________________ Before Torruella, Chief Judge, ___________ Cyr, Circuit Judge, _____________ and Cummings,* Circuit Judge. _____________  ____________________ Thomas A. Palombo, Special Assistant Attorney General, with __________________ whom Jeffrey B. Pine, Attorney General, Rebecca Tedford __________________ _________________ Partington, Special Assistant Attorney General, and Ellen Evans __________ ____________ Alexander, Deputy Chief Legal Counsel, were on brief for appell- _________ ants. Richard A. Sinapi, with whom Sinapi Law Associates, Ltd. and _________________ ___________________________ American Civil Liberties Union, were on brief for appellees. ______________________________  ____________________ December 4, 1996  ____________________  ____________________ *Of the Seventh Circuit, sitting by designation. CYR, Circuit Judge. The Rhode Island Department of CYR, Circuit Judge. _____________ Corrections ("Department") appeals from a district court judgment declaring ultra vires and unconstitutional the Department's _____ _____ application of a Rhode Island statute which would impose a monthly offender fee upon the appellees, all of whom were sen- tenced to probationary terms under Department supervision for criminal offenses committed prior to the effective date of the statute as implemented by regulations promulgated by the Depart- ment. The district court held that the Department's interpreta- tion of the statute exceeded its authority under the enabling statute and that the statute, as applied to appellees, violated the ex post facto clauses in the United States and Rhode Island __ ____ _____ Constitutions. We vacate the district court judgment and remand for the entry of summary judgment for appellants on the ultra _____ vires and ex post facto claims, and for further proceedings on _____ __ ____ _____ appellees' procedural due process claims.  I I BACKGROUND BACKGROUND __________ Rhode Island General Laws 42-56-38, P.L. 1992, ch. 133, art. 97, 2, directs that "[e]ach sentenced offender committed to the care, custody, or control of the [Department] shall reimburse the state for the cost or the reasonable portion _________ thereof incurred by the state relating to such commitment." (Emphasis added.) The offender fee statute itself expressly _________ delegates to the Department the power to determine its effective _________ date by declaring that its provisions "shall not be effective 2 until the date rules and regulations implementing its provisions are filed with the office of the Secretary of State." Id. ___ The Department responded by promulgating, inter alia, _____ ____ Regulation 10.07.03, designating July 1, 1994 as the effective _____________ date of the "offender fee" program, following its filing of the implementing regulations with the Secretary of State on June 17, 1994. See also R.I. Gen. Laws 42-56-10(v) (Powers of the ___ ____ director); R.I. Gen. Laws 42-56-38 (Assessment of costs). The Regulation further provides for "offender fee" waivers based on inability to pay, see Regulation 10.07.03(II)(E), and, in cases ___ of nonpayment, authorizes notification of the appropriate crimi- nal court at any parole or probation revocation hearing, id.  __ 10.07.03(II)(D), as well as civil actions to collect unpaid offender fees, id. Mere nonpayment does not constitute a parole __ or probation violation, however. Id. 10.07.03(II)(D)(3). Nor __ are offenders in "banked" status (i.e., either residing outside Rhode Island or not on supervised status) liable for the fee, id. __ 10.07.03(II)(C)(3).  Appellees, all convicted offenders sentenced to proba- _________ __ ______ tion prior to July 1, 1994, each received advance written notice ____ _____ __ ____ _ ____ that the $15.00 offender fee would become effective July 1, 1994, and subsequently received monthly bills. Appellees thereafter commenced suit in federal district court claiming that the offender fee statute, as applied, violates the Ex Post Facto and Due Process clauses of the United States and Rhode Island Consti- tutions. In due course, the parties submitted cross-motions for 3 summary judgment on a stipulated record and the district court ruled that (i) the Department had exceeded its authority under the enabling statute by interpreting the statute so as to render the offender fee retroactive as to appellees and (ii) the statute violated the Ex Post Facto Clause since it retroactively in- creased the "punishment" for their preenactment crimes. See ___ Taylor v. State of Rhode Island Dept. of Corrections, 908 F. ______ _____________________________________________ Supp. 92 (D.R.I. 1995).  II II DISCUSSION1 DISCUSSION1 __________ A. The Ultra Vires Claim A. The Ultra Vires Claim _____________________ The district court concluded that the statutory inter- pretation adopted by the Department exceeded the scope of its delegated authority because it (i) results in an unauthorized "retroactive" application and (ii) would not be accorded defer- ence by the Rhode Island Supreme Court. As the plain language of the statute demonstrates that the Department did not exceed its mandate, we demur.  Under Rhode Island law, it "is well established . . . that statutes and their amendments are presumed to apply prospec- tively." Hydro-Manufacturing v. Kayser-Roth, 640 A.2d 950, 954 ___________________ ___________ (R.I. 1994). See also VanMarter v. Royal Indem. Co., 556 A.2d ___ ____ _________ ________________  ____________________ 1We review summary judgment rulings de novo, and must uphold __ ____ them if the record, "viewed in the light most favorable to the nonmoving party, reveals no trialworthy issue of material fact and the moving party is entitled to judgment as a matter of law." Velez-Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874-75 (1st Cir. ___________ ___________________ 1993). 4 41, 44 (R.I. 1989); Lawrence v. Anheuser-Busch, Inc., 523 A.2d ________ ____________________ 864, 869 (R.I. 1987). It is only in the event that "it appears by strong, clear language or necessary implication that the Legislature intended the statute or amendment to have a retroac- tive effect," id.; see also Pion v. Bess Eaton Donuts Flour Co., ___ ___ ____ ____ ____________________________ Inc., 637 A.2d 367, 371 (R.I. 1994), that the new enactment "will ____ be interpreted to operate retrospectively." Avanzo v. Rhode ______ _____ Island Dept. of Human Servs., 625 A.2d 208, 211 (R.I. 1993).  ____________________________ The statute itself explicitly states that the offender fee "shall not be effective until the date the rules and regula- tions are filed." R.I. Gen. Laws 42-56-38. Thus, its plain language requires no interpretation, see Whitehouse v. Rumford ___ __________ _______ Liability & Ins. Co., 658 A.2d 506, 508 (R.I. 1995), as it ______________________ mandates prospective application. See, e.g., Hydro-Manufactur- ___ ____ _________________ ing, 640 A.2d at 955 (statute which states that it "shall take ___ effect upon passage" evinces plain legislative intent that it be given only prospective application); Avanzo, 625 A.2d at 211 ______ (holding that phrase "shall take effect" indicates legislative intent that statute be given prospective effect). As the Rhode Island Legislature explicitly delegated to the Department the responsibility for promulgating and filing the required imple- menting rules and regulations with the Secretary of State before the offender fee program could take effect, R.I. Gen. Laws 42- 56-38, and there is no claim that the Department failed to comply with the legislative mandate, its designation of a later (July 1, 1994) effective date could not render its interpretation either 5 ultra vires or retroactive.2 _____ _____ B. The Ex Post Facto Claim B. The Ex Post Facto Claim _______________________ The district court awarded appellees summary judgment on their claims that the offender fee statute violates the Ex Post Facto Clause under both the United States Constitution and the Rhode Island Constitution.3 As the Rhode Island Supreme Court has held that Federal Ex Post Facto Clause jurisprudence likewise guides the required analysis under the Rhode Island Constitution, Lerner v. Gill, 463 A.2d 1352, 1356 (R.I. 1983), ______ ____ cert. denied, 472 U.S. 1010 (1985), these claims merge.  _____ ______ The Ex Post Facto Clause effectively prohibits laws  ____________________ 2It appears that the district court may have been misled by an ambiguity in the statutory language, which states that the offender fee shall apply to "each sentenced offender committed to _________ the care, custody or control of the [Department]." R.I. Gen. Laws 42-56-38 (emphasis added). The court correctly noted that "[t]he word 'committed' could mean either 'who has been commit- ted,' which would include existing probationers, or 'who is committed,' which would implicate only new probationers." Taylor, 908 F. Supp. at 104. However that may be, we suggest, ______ the Department's interpretation cannot be considered ultra vires. _____ _____ As the agency responsible for implementing and enforcing the statute, it was entirely appropriate that the Department disambiguate the statutory language. See Gallison v. Bristol ___ ________ _______ Sch. Comm., 493 A.2d 164, 166 (R.I. 1985).  __________ We need not decide at this time, however, whether the Department's interpretation of the term "committed" would be material under a due process analysis. See Avanzo, 625 A.2d at ___ ______ 208 (retroactive application violates due process); Lawrence, 523 ________ A.2d at 864 (due process challenge to explicitly-retroactive legislation); but see Rhode Island Depositors Economic Protection ___ ___ ___________________________________________ Corp. v. Brown, 659 A.2d 95, 103 (R.I.), cert. denied, 116 S. Ct. _____ _____ _____ ______ 476 (1995) (retrospectivity alone does not render statute viola- tive of due process).  3Article 1, 10, of the United States Constitution pro- vides: "No State shall . . . pass any . . . ex post facto Law." Article 1, 12, of the Constitution of the State of Rhode Island reads: "No ex post facto law . . . shall be passed." 6 "'retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts.'" California __________ Dept. of Corrections v. Morales, 115 S. Ct. 1597, 1601 (1995) ____________________ _______ (quoting Collins v. Youngblood, 497 U.S. 37, 43 (1990)). See _______ __________ ___ also Hamm v. Latessa, 72 F. 3d 947, 956 (1st Cir. 1995), cert. ____ ____ _______ _____ denied, 117 S. Ct. 154 (1996). Thus, ex post facto laws operate ______ __ ____ _____ retroactively either to redefine a crime or increase its "punish- ment." Morales, 115 S. Ct. at 1602 n.3. See also Dominique v. _______ ___ ____ _________ Weld, 73 F.3d 1156, 1162 (1st Cir. 1996). ____ It would appear that the parties failed to call the district court's attention to significant precedents governing the pivotal determination whether civil fees constitute "punish- ment." See Taylor, 908 F. Supp. at 98. Although it involved a ___ ______ "double jeopardy" claim, United States v. Halper, 490 U.S. 435 ______________ ______ (1989), applies as well in the ex post facto context. See Martel __ ____ _____ ___ ______ v. Fridovich, 14 F.3d 1, 3 (1st Cir. 1993) (citing Halper for the _________ ______ view that a civil sanction is "punishment" only when it serves the aims of retribution or deterrence).4 As we explained recent- ly, the Halper "punishment" test applies to "fines, forfeitures, ______ and other monetary penalties designed to make the sovereign whole for harm or loss that is quantifiable in monetary terms." United ______ States v. Stoller, 78 F.3d 710, 717 (1st Cir.) , cert. dismissed, ______ _______ _____ _________ S. Ct. (1996). Since it is clear that the challenged __ ____  ____________________ 4Subsequent to the district court decision in this case, the Rhode Island Supreme Court adopted the Halper test for determin- ______ ing whether a civil fee constitutes "punishment" under the Double Jeopardy Clause. See State v. One Lot of $8,560, 670 A.2d 772 ___ _____ _________________ (R.I. 1996).  7 offender fee fits the Stoller mold, the Halper "punishment" test _______ ______ applies. See also Artway v. Attorney General of State of New ___ ____ ______ __________________________________ Jersey, 81 F. 3d 1235, 1256 n. 18 (3d Cir. 1996) (noting that ______ Halper test applies because Ex Post Facto Clause serves aims ______ similar to Double Jeopardy Clause); DiCola v. Food & Drug Admin., ______ __________________ 77 F.3d 504, 506-07 (D.C. Cir. 1996) (applying Halper test to ______ both ex post facto and double jeopardy claims); Bae v. Shalala, __ ____ _____ ___ _______ 44 F.3d 489, 492-93 (7th Cir. 1995) (employing Halper standard to ______ determine whether civil sanction implicates ex post facto con- __ ____ _____ cerns). Halper adapted the Supreme Court's longstanding subjec- ______ tive test for defining "punishment," see DeVeau v. Braisted, 363 ___ ______ ________ U.S. 144, 160 (1960) ("The question is . . . whether the legisla- tive aim was to punish that individual for past activity."), by coupling it with an objective standard. Accordingly, under the current regime governing civil provisions, we inquire not only whether the legislative intent was punitive in nature, but ______ whether the challenged civil provision is "so extreme . . . as to constitute punishment." Halper, 490 U.S. at 442.  ______ For purposes of determining whether a law is penal in nature, "the labels 'criminal' and 'civil' are not of paramount importance." Id. at 447. Rather, the court must "assess[]. . . ___ the [sanction] imposed and the purposes [it] may fairly be said to serve. Simply put, a civil . . . sanction constitutes punish- ment when the sanction as applied in the individual case serves the goals of punishment[,]" id. at 448; see Martel, 14 F.3d at 3; ___ ___ ______ 8 that is to say, retribution and deterrence. Halper, 490 U.S. at ______ 448. On its face, the offender fee statute, suitably located among other Rhode Island civil statutes, imposes a civil charge.5 The modest fee authorized by the statute comprises no part of any sentence imposed for the crimes committed by offenders. Rather, it is expressly designed to "reimburse" the Department for costs directly associated with providing goods and services required to supervise probationers and parolees living in the community. R.I. Gen. Laws 42-56-38. Moreover, all offender fee revenues are dedicated to such use, Regulation 1.12.01(IV)(K), and waivers are available to offenders unable to pay, Regulation 10.07.03(II)(E). Finally, the same monthly fee is assessed against all offenders released into the community who are cur- rently under Department supervision, without regard to the nature or severity of their respective offenses.6 In our judgment, so  ____________________ 5Our research discloses no relevant legislative history.  6In determining that the offender fee constituted "punish- ment," the district court ruled that it was part of "the law annexed to the crime," Calder v. Bull, 3 U.S. 386, 390 (1798), ______ ____ since probation is punishment and the offender fee is linked to appellees' probationary sentences. In our view, this analysis overlooks several determinative distinctions.  First, though a probationary sentence is "punishment," the supervisory services for probationers released into the community are largely rehabilitative, both in nature and purpose. See R.I. ___ Gen. Laws 42-56-4(c) (Organization of department) ("Rehabilita- tive services shall include . . . intermediary sanctions (includ- ing but not limited to . . . probation, parole, restitution, and community service) . . . ."). See also United States v. Cardona, ___ ____ _____________ _______ 903 F.2d 60, 62 (1st Cir. 1990) (noting that probation serves goals of rehabilitation and public safety), cert. denied, 498 _____ ______ U.S. 1049 (1991); Tillinghast v. Howard, 287 A.2d 749, 752 (R.I. ___________ ______ 1972) ("[I]t is for the purpose of giving a convicted accused the 9 modest a cost-based supervisory fee reasonably cannot be deemed punitive in purpose, especially since any conceivable retributive _______ or deterrent effect could only be inconsequential. See Martel, ___ ______ 14 F.3d at 3.  Finally, we inquire whether the fee nonetheless runs afoul of the objective test announced in Halper: a monetary ______ assessment "that cannot be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term." Halper, 490 U.S. at 448. Under this ______ standard, the offender fee must be deemed "punitive" if it "bears no rational relation to the goal of compensating the [State] for its loss." Id. at 449.7 To state the question in this case is ___ to answer it.  ____________________ opportunity for rehabilitation that he retains his liberty and is placed on probation."). Second, the monthly fee is not imposed on all offenders sentenced to probation, but only those actually receiving the supervisory services whose costs are defrayed by the fee. Regulation 10.07.03(II)(C)(3).  Thus, the offender fee differs materially from the fees at issue in a case relied upon by appellees and cited by the dis- trict court, see In re Petition of Delaware for a Writ of Manda- ___ ________________________________________________ mus, 603 A.2d 814 (Del. 1992), in which monetary sanctions were ___ imposed on the offenders at sentencing. The fees involved in __ __________ that case were blanket surcharges, calculated as percentages of the criminal penalty, fine, or forfeiture imposed at sentencing, rather than reimbursements for the costs of providing services to the offenders. As the Halper Court explained, "it is the purpos- ______ es actually served by the sanction in question, not the underly- ing nature of the proceeding giving rise to the sanction, that must be evaluated." Halper, 490 U.S. at 447 n.7.  ______ 7We note no contention, and no evidence, that the $15.00 monthly fee exceeds the costs associated with providing Depart- ment supervision of offenders released into the community. See ___ Halper, 490 U.S. at 452.  ______ 10 The offender fee statute mandates that "[m]onies received under this section will accrue first to the department of corrections for use to offset costs of the specific care or service." R.I. Gen. Laws 42-56-38. The implementing regula- tions in turn make clear that the offender fee was rationally designed to promote its legislative objective; viz., reimburse- ___ ment of the Department for its costs in providing the required supervisory services to its probationers and parolees. Regula- tion 1.12.01(IV)(K). Furthermore, the implementing regulations explicitly state that the offender fees collected from probation- ers and parolees must be deposited in a restricted account, exclusively available for defraying Department costs in affording offenders the required community supervision.8 Thus, the legis- lative intent actuating the offender fee program is entirely remedial and its practical effect is neither retributive nor deterrent in nature. Under the Halper test, therefore, the ______ offender fee is not punitive.9   ____________________ 8Moreover, as already noted, see supra p. 3, the offender ___ _____ fee is imposed only on probationers and parolees currently under Department supervision in the community, not upon probationers in "banked" status. Regulation 10.07.03(II)(C)(3). Thus, rather than a blanket fee assessed at sentencing without regard to the commencement or duration of any term of community supervision, the Rhode Island offender fee is directly and rationally related to recouping the State's costs in providing supervision to the individual offenders for whose benefit the services are rendered. Cf. In re Petition of Delaware for a Writ of Mandamus, 603 A.2d __ __________________________________________________ 814 (Del. 1992); note 4 supra. _____ 9The fact that nonpayment of the fee can be brought to the attention of the court at a parole/probation revocation hearing, see supra p.3, does not transform the fee into punishment. While ___ _____ revocation of parole/probation might constitute punishment, the Supreme Court explained in Morales that courts must determine _______ 11 III III CONCLUSION CONCLUSION __________ For the foregoing reasons, the district court judgment is reversed and the case is remanded for further proceedings on appellees' procedural due process claims under state and federal law. The parties shall bear their own costs.  SO ORDERED. SO ORDERED __ _______  ____________________ whether a legislative change "produces a sufficient risk of increasing the measure of punishment." Morales, 115 S. Ct. at _______ 1603. A legislative change which creates only a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment" is insufficient to raise the ex post facto specter. Id. As the district court recog- __ ____ _____ ___ nized, any possible link between nonpayment of the offender fee and the revocation of parole/probation is too attenuated to render the offender fee violative of the Ex Post Facto Clause, Taylor, 908 F. Supp. at 101, especially since inability to pay ______ _________ __ ___ constitutes grounds for waiver.  12